## No. 25-1228

# United States Court of Appeals for the Federal Circuit

JANSSEN PHARMACEUTICALS, INC. AND
JANSSEN PHARMACEUTICA NV
*Plaintiffs-Appellees,*

v.

TEVA PHARMACEUTICALS USA, INC.
*Defendant-Appellant.*

Appeal from the U.S. District Court for the District of New Jersey
Case No. 2:18-CV-734-CCC-LDW

## APPELLANT'S MOTION FOR
## EXPEDITED BRIEFING AND ORAL ARGUMENT
## (Non-Confidential Version)

John C. O'Quinn
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

Jeanna M. Wacker
Christopher T. Jagoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7570

December 3, 2024

## CERTIFICATE OF INTEREST

Counsel for appellant Teva Pharmaceuticals USA, Inc. certifies the following:

1.  **Represented Entities (Fed. Cir. R. 47.4(a)(1)):**
    Teva Pharmaceuticals USA, Inc.

2.  **Real Party in Interest (Fed. Cir. R. 47.4(a)(2)):**
    N/A

3.  **Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)):** Teva Pharmaceutical Industries Ltd.

4.  **Legal Representatives (Fed. Cir. R. 47.4(a)(4)):**

    **Walsh Pizzi O'Reilly Falanga LLP**: Liza M. Walsh, William T. Walsh, Jr., Christine I. Gannon

    **Kirkland & Ellis LLP**: Matthew Lembo\*, Justin Bova\*, Mira Mulvaney\*, Gregory Springsted\*, Ashley Ross, Ashley Cade
    (\* indicates no longer with Kirkland & Ellis)

5.  **Related Cases (Fed. Cir. R. 47.5(a)).** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? **Yes.** A separate Notice of Related Case Information has been filed under Rule 47.5(b).

6.  **Organizational Victims and Bankruptcy Cases (Fed. R. App. P. 26.1(b)-(c)):** N/A

**TABLE OF CONTENTS**

MOTION TO EXPEDITE ........................................................................... 1

RELEVANT BACKGROUND .................................................................. 4

    Janssen's '906 Patent Claims "Dosing Regimens," and Extends Janssen's Orange Book Monopoly Over Invega Sustenna by an Extra Thirteen Years. ................................... 4

    The District Court Initially Upholds the Validity of Janssen's '906 Patent, and Enjoins Teva. ............................................... 5

    This Court Vacates and Remands, Identifying Fundamental Errors in the District Court's Obviousness Analysis. ............ 6

    On Remand, the District Court Reaches the Same Result as Before, Based on the Same or Similar Methodological Errors, and Enters an Injunction. ....................................... 6

ARGUMENT ......................................................................................... 10

I.    Delay Threatens Substantial Harm to Teva and the Public Interest. ........................................................................... 10

II.   The Proposed Schedule Will Not Prejudice Janssen. .................... 13

III.  Mylan Concurs in This Motion. .................................................. 16

CONCLUSION .................................................................................... 16

---

**Rule 25.1(e)(1)(B) note re: confidential material**.

Nothing is marked confidential in the motion itself. Only material in attachments are is marked confidential, as follows:

<u>Attachment C</u>, the district court's opinion, is fully under seal under the district court docket pending the parties' submission of redactions and the court's release of a public version. *See* Attachment B at 2. As of the preparation of this filing, no public version has been released, so the opinion is filed under seal here to comply with the district court's orders.

In <u>Attachment D</u>:

- Material marked at page 2 is dollar figures [*continued, next page*]

- Material marked at page 3, lines 1-3, indicates numbers of units and quantity of supply (in months)

- Material marked at page 3, lines 4-8 and lines 10-12 indicates dates, amounts of time, and other details concerning expected expiration and shelf life.

- Material marked at page 2, last two lines of paragraph 6, is dollar figures.

## ATTACHMENTS

| A | Final Judgment in *Janssen v. Teva* (Dkt. 334 in D.N.J. No. 2:18-CV-734, entered Nov. 22, 2024) |
|---|---|
| B | Order (Dkt. 333 in D.N.J. No. 2:18-CV-734, and Dkt. 115 in D.N.J. No. 2:19-CV16484, entered Nov. 21, 2024) |
| C | Opinion (Dkt. 332 in D.N.J. No. 2:18-CV-734, and Dkt. 114 in D.N.J. No. 2:19-CV-16484, entered Nov. 21, 2024) **[confidential]** |
| D | Declaration of Carrie Groff, Vice President of Portfolio and New Product Operations, Teva Pharmaceuticals USA, Inc. (Nov. 25, 2024) **[confidential]** |
| E | Declaration of John C. O'Quinn (Dec. 2, 2024) |
| F | Final Judgment in *Janssen v. Mylan* (Dkt. 116 in D.N.J. No. 2:19-CV-16484, entered Dec. 2, 2024) |
| G | Notice of Appeal in *Janssen v. Mylan* (Dkt. 117 in D.N.J. No. 2:19-CV-16484, filed Dec. 2, 2024) |
| H | December 2, 2024 E-Mail Chain Between Teva, Mylan, and Janssen's Counsel re: Motion to Expedite |

## MOTION TO EXPEDITE

This case returns to the Court following a remand. *See Janssen Pharms., Inc. v. Teva Pharms., USA, Inc.*, 97 F.4th 915 (Fed. Cir. Apr. 1, 2024) (Appeal Nos. 22-1258, -1307, opinion by Judge Prost, joined by Judges Dyk and Hughes). The district court previously upheld the validity of Janssen's U.S. Patent No. 9,439,906, and enjoined Teva from launching a generic version of Invega Sustenna. 571 F.Supp.3d 281 (D.N.J. 2021). This Court vacated and remanded. This Court explained that the district court's nonobviousness ruling committed numerous fundamental legal errors, to such an extent that there were no untainted "underlying factual findings to review" on appeal. 97 F.4th at 927. This Court remanded, and gave substantial guidance for how the district court should proceed. *E.g.*, *id.* at 925-28, 932-36 & nn.9-11.

On remand, however, the district court accepted Janssen's invitation to treat this Court's mandate as an editing exercise. The court issued a new opinion reaching the same result as before, for much the same reasons. And the court again enjoined Teva's generic launch until the '906 patent expires in *2031*. *See* Attachments A-C (opinion, order, and final judgment). Teva appealed immediately. Teva's opening brief will explain

1

that the district court's new judgment rests on legal errors, and should be reversed. Per Fed. R. App. P. 27(a) and Fed. Cir. R. 27(c), Teva respectfully requests that the Court order expedited briefing and oral argument, on the following schedule.

| | |
|---|---|
| Opening Brief | December 20, 2024<br>    (23 days from docketing) |
| Response Brief | January 29, 2025<br>    (40 days from opening brief) |
| Reply Brief | February 12, 2025<br>    (14 days from response brief) |
| Joint Appendix | February 14, 2025<br>    (2 days from reply brief) |
| Oral Argument | Next sitting available for the<br>    panel. |

Per Fed. Cir. R. 27(c)(2), Teva requests that the Court order a response to this motion by **December 9, 2024**, and any reply to be filed within **3** days of the response.

Teva has discussed this motion with all parties. Appellees (Janssen) consent to the December 9 deadline for responding to this motion, but otherwise oppose the requested relief. *See* Attachment H (E-mail chain).

As explained below, there is good cause to expedite. Significant delay threatens harm to Teva and the public. Teva is under an injunction.

The trial on the merits of this case was in *2020*. Following this Court's decision in April, Teva now has valuable drug inventory ready for delivery to patients in need. If Teva's approval and launch are delayed significantly, the products could become unsaleable and require destruction. (Groff Declaration Exhibit 2). This case, moreover, concerns a drug whose "net sales … have exceeded $1 billion annually every year."[1] Every month of delay is one more month that Janssen can extract hundreds of millions of dollars from schizophrenic patients who have now waited many years for a generic alternative.

Janssen has every incentive to delay these proceedings as much as possible, but no legitimate basis to oppose this motion. The proposed schedule places the burden of expedition entirely on Teva. Teva's deadlines are drastically shortened, while Janssen receives its full default allotment under the Rules. The proposed schedule will also not prejudice any party's ability to present its arguments to this Court because the issues are largely the same as those previously presented to this Court,

---

[1] Janssen Response Br. at 59, Fed. Cir. No. 22-1258 (ECF#38/39, Sept. 6, 2022).

which were also briefed to the district court earlier this year on a similar schedule.

## RELEVANT BACKGROUND

### Janssen's '906 Patent Claims "Dosing Regimens," and Extends Janssen's Orange Book Monopoly Over Invega Sustenna by an Extra Thirteen Years.

This Court's opinion describes the relevant background in greater detail. 97 F.4th at 918-24. Janssen markets and sells Invega Sustenna, which is an extended-release injectable formulation of paliperidone palmitate, used to treat schizophrenia. Other than the '906 patent, Janssen's Orange Book patents all expired between 2012 and 2018. Those other patents cover the compound, the long-acting injectable formulation, and its use to treat schizophrenia. Only the '906 patent remains, which expires in 2031—*i.e.*, it extends Janssen's monopoly by *thirteen years.*

The '906 patent recites "dosing regimen[s]" for administering paliperidone palmitate, and tries to avoid prior art by varying known dosing parameters (*e.g.*, "loading" and "maintenance" dose amounts, and injection sites) in known ways.

### The District Court Initially Upholds the Validity of Janssen's '906 Patent, and Enjoins Teva.

In 2017, Teva filed an ANDA seeking approval for a generic version of Invega Sustenna. Janssen sued (D.N.J. Case No. 2:18-CV-734), alleging infringement of the '906 patent. Teva conceded infringement (given the breadth of the claims and ANDA labeling requirements to match the branded drug), but disputed validity. After a bench trial in October 2020, the district court ruled in November 2021 that the '906 patent is not invalid and entered an injunction. Teva promptly appealed.

In a parallel case initiated in 2019 in the same district court (D.N.J. Case No. 2:19-CV-16484), Janssen sued Mylan over Mylan's ANDA, alleging infringement of the same ('906) patent. Janssen and Mylan agreed to be bound by the results of Janssen's case against Teva. Once the Teva case reached final judgment, the district court entered a similar judgment in the Mylan case. Teva's and Mylan's respective appeals to this Court (Nos. 22-1258, 22-1307) were consolidated, and Teva and Mylan filed joint opening and reply briefs. *See* Order Consolidating Appeals, Fed. Cir. No. 22-1238, ECF #11 (Jan. 11, 2022).

**This Court Vacates and Remands, Identifying Fundamental Errors in the District Court's Obviousness Analysis.**

In April 2024, this Court issued a unanimous, precedential opinion vacating the district court judgments in the Teva and Mylan cases, and remanding for further proceedings. 97 F.4th 915. The opinion explained that the district court's obviousness analysis erroneously required Teva to prove obviousness of unclaimed limitations, *id.* at 925-27, "was erroneously rigid in several respects," *id.* at 928, "ran afoul of *KSR*'s basis mandate in a number of ways," *id.* at 931, and committed numerous additional errors analyzing secondary considerations. *See id.* at 932-36 & nn.9-11; *e.g.*, *id.* at 933 ("did not make the correct comparisons" for unexpected results), 935 ("we do not discern any analysis of nexus" for industry praise); 936 ("the blocking-patent analysis rested on two faulty premises."). The Court ordered a remand rather than reversal because the district court's errors ran so deep that they "prevented" the district court "from carrying out its factfinding role." *Id.* at 928; *see id.* at 927.

**On Remand, the District Court Reaches the Same Result as Before, Based on the Same or Similar Methodological Errors, and Enters an Injunction.**

On remand, the district court considered the Teva and Mylan cases together. The parties submitted new briefs, on an expedited schedule,

6

based on the bench trial record from 2020. *See* Stipulation, D.N.J. No. 2:18-cv-734, ECF 297 (June 12, 2024). No new evidence was submitted, and no additional hearings took place. Teva and Mylan contended that, once the errors this Court identified were corrected, the '906 patent's claims were invalid. Janssen downplayed this Court's reasoning, and urged the district court to "clarify" that certain of its rulings did not actually commit the errors this Court identified. *E.g.*, Janssen Br. at 45, 58, 60, 62, 65, 89, D.N.J. No. 2:18-cv-734, ECF#300 (June 14, 2024).

Taking Janssen's cues, the district court issued a new opinion reaching the same result, again upholding Janssen's '906 patent. Attachment C. The court's opinion purports to be "in accordance with the Federal Circuit's instructions," Attachment C at 4, and goes out of its way to deny that it commits certain errors this Court identified previously.[2] As

---

[2] *E.g.*, Attachment C at 14 ("the Court does not discard the teachings of the '548 Protocol because it lacks both data and results"), 30 ("The Court notes that the below discussion, as well as this entire Opinion, analyzes whether Teva proves that a POSA would possess a reasonable expectation of success in administering paliperidone palmitate to *a* patient according to the claimed dosing regimen."), 39 ("The Court acknowledges that claims 10 and 13 do not contain a specific level of renal impairment…").

The court also relied heavily on the district court opinion in *Janssen Pharmaceuticals, Inc. v. Tolmar, Inc.*, 718 F. Supp. 3d 394 (D. Del. 2024). Janssen submitted that decision to this Court prior to this Court's earlier

Teva's briefs will explain in this appeal, the district court's new opinion commits the same fundamental errors as before, and the judgment should be reversed.

*First*, as before, the district court accepted Janssen's arguments for reading the claims narrowly, effectively heightening Teva's burden of proof for obviousness. For example, Claims 1 and 2 broadly cover dosing regimens where the so-called "maintenance" doses may be greater than or equal to the "loading" doses. The "loading" doses are the first two doses: 150mg and 100mg. The subsequent "maintenance" doses may be as high as 150mg or as low as 25mg. Yet, the district court characterized those claims as *requiring* a dosing regimen that "starts higher *and decreases*," which the court contends is "the opposite" of prior art that teaches "to begin with lower initial doses and to adjust the dose upward as needed." Attachment C at 28. Elsewhere, and in tension with its characterization of requiring a regimen that "starts higher and decreases," the court char-acterized the claimed maintenance doses as "independent of" the claimed

---

decision in this case. Janssen 28(j) Letter, Fed. Cir. No. 22-1258, ECF #68 (Mar. 1, 2024). *Tolmar* involved a subset of the prior art references at issue in this case (as well as references held to *not in fact be prior art*) and turned on a different record and different arguments.

loading doses, and distinguished other prior art on that ground. Attachment C at 18. As before, in these examples and elsewhere, the district court's "misunderstanding about the claims impacted the court's overall obviousness analysis." *See* 97 F.4th at 926.

*Second*, the district court again applied an unduly rigid approach that "inflat[ed] the significance of minor variations between the prior art and the claims." 97 F.4th at 928. For example, the court found no reasonable expectation of success in part because it contended two references each "only disclose the use of a single dose," and "single-dose regimens are not as complex as multi-dose regimens." Attachment C at 32. That is clearly erroneous as a factual matter, as the '544 patent discloses a *multi-dose* regimen: injections every three weeks of 2-4mg/kg. To the extent the court means to distinguish between multiple injections of a single amount versus multiple injections of different amounts, that again "inflate[s] the significance of minor variations" in the same way this Court cautioned against in vacating and remanding. 97 F.4th at 928. Teva will show that these and other errors warrant reversal.

The district court entered final judgment in Teva's case on the evening of Friday, November 22. (Attachment A). Teva appealed the next

9

business day (November 25), and its appeal was docketed in this Court as no. 25-1228.

The district court entered final judgment in Mylan's case yesterday, December 2. (Attachment F). Mylan appealed immediately (Attachment G), and is awaiting docketing in this Court. And as in the previous appeal, Teva anticipates that Mylan's appeal will be consolidated with Teva's and that Teva and Mylan will submit joint briefs.

## ARGUMENT

### I.    Delay Threatens Substantial Harm to Teva and the Public Interest.

Motions to expedite are "appropriate where the normal briefing and disposition schedule may adversely affect one of the parties, *as in appeals involving preliminary or permanent injunctions…*" Fed. Cir. R. 27, Practice Note. Under the district court's judgment Teva (and Mylan) are under permanent injunctions. At a minimum, following the normal briefing and disposition schedule here would substantially harm Teva and the public.

After this Court vacated the district court's first judgment and injunction in April 2024, Teva began preparing to launch its generic product and exercise its anticipated statutory 180-day exclusivity right.

As explained in the attached confidential declaration by Teva's Vice President of Portfolio and New Product Operations, Teva made substantial investments in manufacturing, and has substantial inventory either finished or in production. Attachment D ¶5. Because the product has a limited shelf life, substantial delay in this appeal raises the prospect that inventory will need to be destroyed at substantial cost to Teva. Attachment D ¶¶5-6.

Delayed appellate review would also harm the public. Teva intends to sell at a discount to the brand price. As noted, Janssen's Invega Sustenna's "net sales … have exceeded $1 billion annually every year," because Janssen's '906 patent has blocked competition for the past six years and counting. Teva's launch of a generic alternative at a discounted price will bring long-overdue benefits to patients and the U.S. healthcare system. The savings from competition are particularly substantial here because schizophrenia patients are generally treated with long acting injectables for years. Attachment D ¶8. But under the district court's judgment, the public will be denied those benefits for at least as long as Janssen can delay review in this appeal. Indeed, delayed review will harm the public not only because Teva will be enjoined from selling its

11

product, but also because of the effect the injunction will have on Teva's ability to replace its inventory and supply the market continuously. Attachment D ¶5.

In discussing this motion with Teva, Janssen observes that the first appeal was not expedited, and characterizes delayed approval under the Hatch-Waxman Act as "routine." Attachment H at 1. Neither objection is legitimate. As just explained—and as Janssen already knew from a recent exchange of letters in district court (D.N.J. No. 18-cv-734 Dkt. 331 (sealed)), Teva's situation in 2024 following the new final judgment is not the same as in 2021. The Hatch-Waxman Act, moreover, does not contemplate endless delay. Quite the opposite—by its scheme of deadlines and by making an ANDA filing an act of infringement, it is designed to *"facilitate[] the early resolution of patent disputes." Caraco Pharm. Lab. v. Forest Labs.*, 527 F.3d 1278, 1283 (Fed. Cir. 2008) (emphasis added). Here, that has not happened. Teva and Mylan filed ANDAs in 2018 and 2019. As a result of the district court's errors, however, this Court explained that in April 2024 that it still had no "underlying factual findings to review" from the district court that were not tainted by legal error. 97 F.4th at 927

12

## II.    The Proposed Schedule Will Not Prejudice Janssen.

The proposed schedule will not prejudice Janssen. Janssen will receive the full 40 days under the Rules for its response brief. *See* Fed. Cir. R. 31(a)(2). Teva does not ask the Court to shorten Janssen's deadline at all—only to forbid extensions and to schedule oral argument promptly, as this Court has done in numerous other expedited appeals.[3]

Only Teva will shoulder the burden of shortened deadlines. Teva has already acted promptly to hasten the start this appeal—and thus cut short Teva's time to prepare an opening brief—by approximately 56 days. Although the district court's November 21 ruling gave the parties 30 days to submit a proposed final judgment, Attachment B at 2, Teva submitted a proposal the very next day, leading the district to enter final judgment and start the appeal clock on November 22. Teva appealed the following business day, rather than taking 30 days under Fed. R. App. P. 4.

On top of those 56 days trimmed from Teva's allotment before this appeal even started, Teva proposes to file its opening brief 38 days early

---

[3] *E.g.*, *Telefonaktiebolaget LM Ericsson v. Lenovo*, ECF No. 26 (Mar. 25, 2024 order granting motion to expedite); *Dexcom, Inc. v. Abbott Diabetes Care, Inc.*, ECF No. 15 (May 23, 2023 order granting motion to expedite); *Ericsson Inc. v. Samsung Electronics Col, Ltd.*, ECF No. 14 (Feb. 12, 2021 order granting motion to expedite).

13

(less than half its allotted time under the Rules), and to file its reply brief 7 days early.

Janssen has no basis to oppose this motion. Janssen's email observes that its allotted time includes end-of-year holidays. Attachment H. That is insubstantial. Teva's counsel have already worked through Thanksgiving on their opening brief and sacrificing most of their allotted time under the Rules, while asking nothing similar of Janssen. When the shoe was on the other foot—when Janssen perceived that the district court might rule in Teva's favor—Janssen was more than willing to seek a TRO and let the burdens of expedited briefing fall where they may. (D.N.J. No. 18-cv-734 Dkt. 330 (sealed)).

Janssen also refers to depositions in another case, starting no sooner than January 6, and states that it needs "at least a 45-day extension of time to file its response brief." Attachment H at 1. That is likewise insubstantial. This Court's *Guidance on Oral Argument Scheduling Conflicts* observes that "depositions … can typically be rescheduled," and are thus "[g]enerally [u]nallowable [c]onflicts."[4]

---

[4]    *See*    https://cafc.uscourts.gov/wp-content/uploads/OralArguments/ Oral%20Argument%20Conflict%20Guide.pdf

Finally, Janssen even opposed prompt scheduling of *oral argument*, seeking delay until the completion of briefing in *Janssen v. Tolmar*, No. 24-2020. As the district court acknowledged, *Tolmar* is a different case with a different record in a different district court, where a different challenger using different prior art failed to invalidate Janssen's '906 patent. Attachment C at 11; *see supra* n.2. That appeal (consolidated with Nos. 24-1699, -1700, -1980, and -2020) includes Janssen's cross-appeal and has already been delayed substantially, with the Court granting a 119-day extension of time for the opening brief—which is the first of four briefs given Janssen's cross-appeal. There is no reason to delay this appeal for many months while that one runs its course.

At bottom, Janssen seeks delay for delay's sake. Every month that Janssen can delay appellate review is one more month it can reap *hundreds of millions of dollars* in revenue from schizophrenic patients. The full 40 days under the Rules should be *more than* sufficient for Janssen to prepare its response brief. This appeal is limited to obviousness. It presents substantially the same issues that the same counsel already briefed to this Court once before, and briefed to the

15

district court earlier this year on an expedited schedule. Janssen has no basis to oppose this motion.

## III. Mylan Concurs in This Motion.

As discussed above, Janssen and Mylan agreed in parallel litigation to be bound by the results of Janssen's case against Teva. Mylan's appeal was consolidated with Teva's in proceedings before this Court. The district court's opinion on remand applies to both cases, and Mylan promptly appealed. Attachment F. Once Mylan's appeal is docketed in this Court, it should be consolidated with this appeal, and briefed on the schedule proposed herein. To avoid unnecessary disputes or delays, Teva has discussed this motion with Mylan, and is authorized to state that Mylan concurs in this motion. A declaration to that effect is attached.

## CONCLUSION

For the foregoing reasons, Teva respectfully requests that the Court order expedited briefing and oral argument in this appeal, as well as an expedited briefing schedule on this motion, on the schedules stated above. (p.2, *supra*).

December 3, 2024                  Respectfully submitted,


                                 */s/ John C. O'Quinn*
                                 John C. O'Quinn
                                 William H. Burgess
                                 KIRKLAND & ELLIS LLP
                                 1301 Pennsylvania Ave., N.W.
                                 Washington, D.C. 20004
                                 (202) 389-5000

                                 Jeanna M. Wacker
                                 Christopher T. Jagoe
                                 KIRKLAND & ELLIS LLP
                                 601 Lexington Ave.
                                 New York, NY 10022
                                 (212) 446-4800

                                 Noah Frank
                                 KIRKLAND & ELLIS LLP
                                 200 Clarendon Street
                                 Boston, MA 02116
                                 (617) 385-7570

                                 *Counsel for Appellant Teva*
                                 *Pharmaceuticals USA, Inc.*

17

**RULE 25.1(e)(2) CERTIFICATE OF CONFIDENTIAL MATERIAL**

This motion complies with Fed. Cir. R. 25.1(d)(1)(A). **0** words are marked confidential in the motion. Only material in attachments is marked confidential.

/s/ *John C. O'Quinn*

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION**

This motion complies with Fed. R. App. P. 27 and contains **3166** words.

/s/ *John C. O'Quinn*

**CERTIFICATE OF SERVICE**

On December 3, 2024, the non-confidential version of this motion was filed by CM/ECF, and the confidential version was served by e-mail on the following counsel for the appellees, under the parties' agreement to accept electronic service:

Barbara Mullin (bmullin@pbwt.com)
Andrew Cohen (acohen@pbwt.com)
Aron Fischer (afischer@pbwt.com)
J. Jay Cho (jcho@pbwt.com)
Zhiqiang Liu (zliu@pbwt.com)
Keith J. Miller (kmiller@rwmlegal.com)

/s/ *John C. O'Quinn*