**Nos. 2025-1228, -1252 (consolidated)**

# United States Court of Appeals for the Federal Circuit

No. 2025-1228

JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA NV,
*Plaintiffs-Appellees,*

v.

TEVA PHARMACEUTICALS USA, INC.,
*Defendant-Appellant.*

Appeal from the U.S. District Court for the District of New Jersey,
Case No. 2:18-CV-734, Judge Claire C. Cecchi

--------------------------------

No. 2025-1252

JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA NV,
*Plaintiffs-Appellees,*

v.

MYLAN LABORATORIES LIMITED,
*Defendant-Appellant.*

Appeal from the U.S. District Court for the District of New Jersey,
Case No. 2:19-CV-16484, Judge Claire C. Cecchi

## APPELLANTS' REPLY BRIEF (CORRECTED)

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8776

Eric T. Werlinger
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
(202) 625-3500

Jillian M. Schurr
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5200

*for Mylan Laboratories Limited, Appellant in No. 25-1252*

John C. O'Quinn
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, DC 20004
(202) 389-5000

Jeanna M. Wacker
Christopher T. Jagoe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7570

*for Teva Pharmaceuticals USA, Inc., Appellant in No. 25-1228*

## TABLE OF CONTENTS

Table of Authorities ........................................................................ ii

Reply Brief ........................................................................ 1

I. The District Court Erroneously Upheld Representative Claim 2. ........................................................................ 2

A. Claim 2 is *Prima Facie* Obvious. ........................................ 2

1. The District Court Erred by Not Finding Claim 2 *Prima Facie* Obvious. ........................................ 2

2. No Evidence Rebuts *Prima Facie* Obviousness. ............ 7

B. Regardless, Claim 2 is Obvious as a Matter of Law. ............ 14

1. The District Court Erroneously Presumed Significance of Unequal Loading Doses, and Required a Singular Motivation to Pursue the Claimed Regimens. ........................................ 17

2. The District Court Erroneously Siloed Prior Art. ....... 19

3. The District Court Erroneously Assessed Reasonable Expectation of Success. ............................ 25

II. The District Court Erroneously Upheld the Remaining Representative Claims. ........................................ 29

A. The Renal-Impairment Claims (10 and 13) are Obvious. ........................................................................ 29

B. The Particle-Size Claims (20 and 21) are Obvious. .............. 32

III. Secondary Considerations Do Not Prevent Reversal. .................. 35

A. Janssen's Industry-Praise and Skepticism Evidence Is Legally Deficient and Factually Weak. ................................ 35

B. Blocking Patents Undermine Any Commercial Success or Long-Felt Need. ........................................ 37

Conclusion ........................................................................ 39

# TABLE OF AUTHORITIES

## Cases

*Adapt Pharma Ops., Ltd. v. Teva Pharms USA, Inc.*, 25 F.4th 1354 (Fed. Cir. 2022) .... 17, 20, 21

*Alcon Research Ltd. v. Apotex Inc.*, 687 F.3d 1362 (Fed. Cir. 2012) .... 28

*Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286 (Fed. Cir. 2013) .... 25, 26

*Anderson v. Bessemer City*, 470 U.S. 564 (1985) .... 16

*AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325 (Fed. Cir. 2021) .... 34

*Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342 (Fed. Cir. 1999) .... 13

*Camreta v. Greene*, 563 U.S. 692 (2011) .... 5

*Durango Assocs., Inc. v. Reflange, Inc.*, 843 F.2d 1349 (Fed. Cir. 1988) .... 5

*E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996 (Fed. Cir. 2018) .... 3, 7, 8

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331 (Fed. Cir. 2021) .... 27-28

*Forest Labs. LLC v. Sigmapharm Labs. LLC*, 918 F.3d 928 (Fed. Cir. 2019) .... 11

*Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. De C.V.*, 865 F.3d 1348 (Fed. Cir. 2017) .... 26

*In re Kumar*, 418 F.3d 1361 (Fed. Cir. 2005) .... 1, 3-4

*In re Lintner*, 458 F.2d 1013 (CCPA 1972) .... 17

*In re Samuels*, No. 21-2166, 2024 WL 960453 (Fed. Cir. Mar. 6, 2024) .... 34

*Intel Corp. v. PACT XPP Schweiz AG*,
61 F.4th 1373 (Fed. Cir. 2023)....................16-18

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004)....................4, 6

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
97 F.4th 915 (Fed. Cir. 2024)....................*passim*

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................1, 14-17, 29, 30

*Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010)....................16

*Medichem SA v. Rolabo, SL*,
437 F. 3d 1157 (Fed Cir 2006)....................34

*Merck & Co. v. Teva Pharms USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)....................28

*Neptune Generics, LLC v. Eli Lilly & Co.*,
921 F.3d 1372 (Fed. Cir. 2019)....................37

*OSI Pharms., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019)....................26

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007).....6, 11, 27, 35

*Pfizer, Inc. v. Sanofi Pasteur*, 94 F.4th 1341 (Fed. Cir. 2024)....................7

*Pharmacyclics LLC v. Alvogen, Inc.*,
556 F.Supp.3d 377 (D. Del. 2021)....................5
No. 21-2270, 2022 WL 16943006 (Fed. Cir. Nov. 15, 2022)....................4-5

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018)....................33

*Salix Pharms. v. Norwich Pharms.*,
98 F.4th 1056 (Fed. Cir. 2024)....................5, 28, 32

*Sanofi v. Watson Labs. Inc.*,
875 F.3d 636 (Fed. Cir. 2017) .......... 28

*Sears, Roebuck & Co. v. Stiffel Co.*,
376 U.S. 225 (1964) .......... 10

*Smith v. Nichols*, 88 U.S. 112 (1875) .......... 1

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
18 F.4th 1377 (Fed. Cir. 2021) .......... 27

*Titanium Metals Corp. v. Banner*,
778 F.2d 775 (Fed. Cir. 1985) .......... 4, 6

*Uber Techs., Inc. v. X One, Inc.*,
957 F.3d 1334 (Fed. Cir. 2020) .......... 4

*Valeant Pharms. Int'l v. Mylan Pharms., Inc.*,
955 F.3d 25 (Fed. Cir. 2020) .......... 4

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) .......... 37

*Yeda Rsch. v. Mylan Pharms., Inc.*,
906 F.3d 1031 (Fed. Cir. 2018) .......... 16, 17

**Note: All quoted emphasis is added unless otherwise indicated.**

## REPLY BRIEF

Janssen treats this Court's earlier decision as a non-event. Rather than defending the district court's methodological errors, Janssen buries them with side issues, or repeats the errors. But Janssen does not materially dispute the salient facts. Claim 2's loading-dose combination differs from the '548 protocol *only by changing one dose by 50mg-eq.*, within prior-art ranges. And the closely-related '544 patent and WO'384 teach the claimed dose amounts are effective. Such trivial tweaks to known parameters have never been patentable. *Smith v. Nichols*, 88 U.S. 112, 119 (1875). On the undisputed facts, Janssen's claims are obvious. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). The district court ruled otherwise only by accepting Janssen's erroneous legal argument against *prima facie* obviousness, and flouting this Court's mandate. Either reason warrants reversal.

Claim 2 is *prima facie* obvious. Janssen's arguments contravene precedent, and misread an isolated phrase in *Kumar*. Janssen's patent preempts any rebuttal to *prima facie* obviousness by conceding the claimed regimens are no better than unclaimed regimens, and acknowl-

edging a POSA's ability to "easily determine the effective amount of paliperidone to administer." Appx165(14:13-15).

Janssen's remaining arguments lack merit. Like the district court, Janssen attacks individual prior-art references one-by-one, implying that if any reference does not exactly anticipate a claim feature, the claims cannot be obvious. That is the "siloed and inflexible approach" this Court rejected previously. *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 97 F.4th 915, 928 (Fed. Cir. 2024). Janssen's and the district court's reasoning would make *any* arbitrarily different regimen—*e.g.*, 137mg-eq., then 113mg-eq.—patentable today. BlueBr.45.

Janssen has no sound defense of the other representative claims. It doubles down on the errors below, such as treating prior-art silence as implicitly teaching away. Nor does Janssen dispute that this Court need not reach secondary considerations to reverse. This Court should reverse.

## I. The District Court Erroneously Upheld Representative Claim 2.

### A. Claim 2 is *Prima Facie* Obvious.

#### 1. The District Court Erred by Not Finding Claim 2 *Prima Facie* Obvious.

Janssen correctly does not challenge the district court's ruling that the injection site is obvious. Appx35-36. That leaves "unequal, decreasing

loading doses." Claim 2 differs from the '548 protocol *only* by changing either of two doses by 50 mg-eq., while leaving all doses within ranges taught by *both* the '548 protocol *and* WO'384. BlueBr.43. Absent "evidence indicating that there is something special or critical about the claimed range, *an overlap suffices*" to show obviousness. *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1008 (Fed. Cir. 2018). Janssen's responses lack merit.

*First*, Janssen and the district court misread *In re Kumar*, 418 F.3d 1361 (Fed. Cir. 2005), to require a single prior-art disclosure that would *anticipate* the claims, except for one difference. Janssen then argues claim 2 has two differences from the '548 protocol: injection sites (irrelevant, *see* Appx35-36) and loading-dose sequence. RedBr.26-28.

*Kumar* does not support Janssen. On its face, *Kumar* says "may," not "can only," and says "the only difference from *the prior art*," not the only difference from the *single prior-art range disclosure*. 418 F.3d at 1366. Moreover, the question of one versus multiple "differences" was not presented. *Kumar* did not, in its background exposition of the law, implicitly overrule precedent and announce a new "only difference" rule.

More fundamentally, every precedential decision to address this issue rejects Janssen's arguments. BlueBr.34-35. This Court consistently finds claims *prima facie* obvious notwithstanding multiple "differences" between the claims and the prior-art range disclosure. *Id.* In *Valeant Pharms. Int'l v. Mylan Pharms., Inc.*, 955 F.3d 25, 31-33 (Fed. Cir. 2020), for example, the prior-art overlapping pH range disclosure concerned *different compounds* than the claims. Precedent also holds *multiple* prior-art disclosures of points can together form a range. *E.g.*, *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1322 (Fed. Cir. 2004) ("the range is disclosed in *multiple prior art patents*...."); *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 783 (Fed. Cir. 1985). All of this follows the principle that obviousness compares claims with "teachings of the prior art as a whole." *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1341 (Fed. Cir. 2020); 97 F.4th at 928. Janssen has no answer except to suggest all the relevant precedential decisions are limited to their facts. RedBr.27.

*Pharmacyclics LLC v. Alvogen, Inc.*, No. 21-2270, 2022 WL 16943006 (Fed. Cir. Nov. 15, 2022), cited RedBr.26, does not support Janssen. *Pharmacyclics* emphasized that "the prior art did not disclose that [the claimed drug] was effective at treating [the same disease]." *Id.*

at *9. *Pharmacyclics* cited the district court opinion, which addressed prior art as a whole, without requiring a single all-but-anticipating reference. 556 F.Supp.3d 377, 403 (D. Del. 2021) (*"[N]one of the references* … suggested" the claim element). *Pharmacyclics* is non-precedential in any event. *See Salix Pharms. v. Norwich Pharms.*, 98 F.4th 1056, 1065 (Fed. Cir. 2024).

Nor do the *Tolmar* district court decisions support Janssen. *E.g.*, RedBr.1, 26-27, 30-31. *Tolmar* involved different evidence and arguments, and reduced to a single-reference obviousness challenge because Tolmar "depended heavily" on a reference that was not prior art. BlueBr.23-24 (quoting *Tolmar*); *id.* at vii-viii, 57-58, 79. *Tolmar* is not precedent, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), and does not declare Janssen's patent "'valid' … because other challengers may be able to prove invalidity using different evidence." *Durango Assocs., Inc. v. Reflange, Inc.*, 843 F.2d 1349, 1356 n.4 (Fed. Cir. 1988).

*Second*, Janssen contends the "specific sequence of unequal, decreasing loading doses" is a "non-numerical claim feature[]." RedBr.26-27. The main problem for Janssen is that the '548 protocol already discloses the claimed doses, administered *at the claimed intervals*.

BlueBr.12-13. The only difference is the *numerical* amount of one dose. All the claim does is mix and match explicitly-recited prior-art doses (also in WO'384, and taught to be varied based on patient needs), *on the same days*. Under *Iron Grip* and *Titanium Metals*, that is enough for *prima facie* obviousness.

Moreover, no authority limits *prima facie* obviousness to "numerical claim features." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1368 (Fed. Cir. 2007), for example, reversed nonobviousness and analogized "optimization of the acid addition salt formulation" (a non-numerical term) to "optimization of a range."

*Finally*, this Court did not "implicitly reject[]" *prima facie* obviousness "by instructing the district court to address motivation on remand." RedBr.28. This Court vacated the *entire* obviousness judgment because fundamental errors affected "the district court's *overall* obviousness analysis," leaving no untainted "factfindings" to review. 97 F.4th at 926-27. This Court observed "the loading dosage *amounts* were undisputedly disclosed in the prior art, both as a particular dose *and as a point within a disclosed range*," which the district court improperly dismissed. *Id*. at 926 (second emphasis added). This Court's observation that errors extended

to motivation to combine, *id.* at 930, did not foreclose *prima facie* obviousness.

### 2. No Evidence Rebuts *Prima Facie* Obviousness.

#### a. Overlapping ranges do not require further proof of "routine optimization."

Janssen contends Defendants failed to "prove a routine optimization theory." RedBr.29. No authority imposes that additional burden—Janssen has it backwards. *DuPont* explains the legal framework. 904 F.3d at 1006-08; BlueBr.31-33. If claims recite values of a known parameter within prior-art ranges, they are *prima facie* obvious—*i.e.*, presumptively the result of routine optimization. *DuPont*, 904 F.3d at 1006. The patentee may *rebut* with evidence that claimed values are critical or special or otherwise *not* from routine optimization. *Id.* at 1008. But absent such evidence, "an overlap suffices." *Id.*

*Pfizer, Inc. v. Sanofi Pasteur*, 94 F.4th 1341 (Fed. Cir. 2024), cited RedBr.29, does not hold otherwise. The passage Janssen quotes was explaining that optimized values of a result-effective variable are "normally obvious," *even without overlap* between claimed values and prior-art disclosures, which does not help Janssen. 94 F.4th at 1347-48.

**b. The ’906 patent refutes Janssen’s arguments.**

There is no “evidence indicating that there is something *special or critical* about the claimed range,” *DuPont*, 904 F.3d at 1008—quite the opposite. The ’906 patent refutes Janssen’s arguments about “routine optimization,” RedBr.29, or any rebuttal to *prima facie* obviousness. RedBr.31-35. Consistent with WO’384 and the ’544 patent, the ’906 patent acknowledges POSAs could “easily determine the effective amount of paliperidone to administer.” Appx165(14:13-15). Indeed, it relies on a POSA’s skill to enable the claims. Moreover, the patent *denies* the claimed regimens are superior to unclaimed regimens. It identifies 150/100, 100/100, and 150/25 *all* as “optimized loading dose regimens” Appx170(23:15-25). And in a clinical trial *all* regimens performed better than placebo, “suggesting a positive benefit-risk ratio *across the dose range*”, with 150/150 (which is in the ’548 protocol) and 150/25 outperforming 150/100 at day 8. Appx172(28:3-7, 31:45-50); *see* Appx39152. The Court need go no further to reverse.

**c. Janssen’s “unpredictability” and “unexpected results” arguments are unsound.**

None of Janssen’s arguments demonstrate that the claimed values were *special or critical* vis-à-vis prior-art range disclosures. Janssen’s

"unpredictability" arguments have no bearing on that inquiry. Janssen notes there was "no *commercial* formulation" of LAI paliperidone palmitate, "or published data on its effects on humans" in 2007. RedBr.30-31. That ignores that WO'384 disclosed the *exact* Invega Sustenna *formulation* and taught efficacy. Appx10304-10305(304:23-305:3); Appx13301(1-4); 97 F.4th at 924; BlueBr.11. It also ignores the efficacy taught by the '544 patent, whose claims are presumed enabled. Appx13242(10:58-65) (cl.7); Appx12197(2197:21-24). Clinical data for oral paliperidone *and* LAI Risperdal (which metabolizes to paliperidone) were published. Appx16233; Appx159(1:54–57); Appx10098(98:10-17).

Janssen's "unexpected results" argument (alleged "rapid and sustained efficacy") is legally incorrect, and likewise fails to show criticality. RedBr.31-35. Patentees cannot conjure "unexpected" results from their own surprise or mistakes. *E.g.*, 97 F.4th at 929-30. Yet Janssen repeatedly emphasizes its path, expenditures, and "estimated … 16% chance of FDA approval." RedBr.5-13, 24, 32. As this Court observed, the claims do not require efficacy, inventors' path and expectations (as opposed to a POSA's) are generally irrelevant, and the FDA approval process should

not be conflated with obviousness. 97 F.4th at 928-29, 935. That "formulation work and clinical testing" may have been "time-consuming and expensive," RedBr.30-31, does not mean the *claimed values* are special or critical. Patents issue for innovations, not as "favors," *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229 (1964), or prizes for effort.

Unexpected results must be different in kind from closest prior art, and unexpected "compared with a POSA's expectations." 97 F.4th at 934. BlueBr.39. The closest prior art is the '548 protocol's 150/150 and 100/100 regimens, 97 F.4th at 934 n.10, which the '906 patent says outperformed the claimed regimen. Perhaps because of Janssen's distractions, the district court *never* compared the POSA's expectations for rapid and sustained efficacy with the claimed regimen's results.

Janssen is wrong to suggest that the district court found that a POSA would have expected the prior-art regimens to *only* achieve efficacy by day 64. RedBr.32. The district court made no such finding. Day 64 was the day of the fourth, final dose, but "[e]fficacy and safety [were to] be evaluated periodically throughout the study." Appx13244. Such evaluations were not futile. That a POSA would have expected efficacy *by* day 64, as Janssen concedes, does not mean a POSA would not have expected

efficacy sooner. Efficacy by day 8—*which, regardless, is not claimed*—cannot be "unexpected" because there is no evidence that a POSA would not have expected it. *See Forest Labs. LLC v. Sigmapharm Labs. LLC*, 918 F.3d 928, 937 (Fed. Cir. 2019) (similar error); *Pfizer v. Apotex*, 480 F.3d at 1370-71; BlueBr.39.

Janssen's assertion that the "claimed dosing regimen fulfilled a long-unmet need by achieving rapid and sustained efficacy" is belied by its own population-based modeling,[1] which predicted similar rapid and sustained efficacy for claimed *and* prior-art regimens. Appx41907; Appx54693. And again, the claims are directed to "a" patient, 97 F.4th at 926. The district court did not find that the claimed dose amounts or injection sites produced *any* different effect for any individual patient.

Janssen confuses issues by arguing its modeling cannot "establish the previous *expectations* of a POSA." RedBr.34. That is not Defendants' argument. *Janssen offered* its modeling as "unexpected results." Defendants appropriately refuted the argument Janssen made.

[1] Janssen refers misleadingly to "hard data," Red.Br.32-33, by which it means *inputs* to modeling. Janssen's "results" are not clinical outcomes.

It is also irrelevant and false that Janssen claims it "discover[ed] that deltoid injections resulted in markedly superior absorption." RedBr.34. Janssen suggests throughout that its switch from gluteal to deltoid injections was the product of innovation. *E.g.*, RedBr.8, 10. But even the district court disagreed on remand. Appx35-36.

Janssen's "discovery"—which Janssen euphemistically calls a "BMI effect … slowing efficacy," RedBr.10—is Janssen's *mistake* of failing to use a long-enough needle to reach the gluteal muscle in high-BMI patients. The "BMI effect" is a long-recognized tradeoff. Appx41876-41877 (citing Cohen 1972). Most patients have more fat on their buttocks than upper arms, so gluteal injections usually require a longer needle to avoid injecting into fat. Appx41876. That is what happened in Janssen's earlier trials. Appx41887; Appx11380(1380:12-14); Appx11450-1451(1450:11-1451:23); Appx41869. Janssen used the wrong needle, so paliperidone palmitate injections with a 1.5" needle performed worse than Risperdal Consta injections with a 2" needle. Appx10900(900:13-20); Appx10891-10892(891:22-892:25); Appx30075(fig.9); Appx10889(889:1-4, 9-23); Appx11220(1220:16-22); Appx12447-12448(2447:24-2448:19). For regulatory and business reasons, Janssen switched to the deltoid for initial

injections, instead of facing the "nightmare" of redoing development with the correct needle. Appx10901-10903(901:23-903:2); Appx23028. Ultimately, the model predicts more subjects in the therapeutic window when more subjects receive a true intramuscular injection. Janssen "discovered" only the predictable consequences of its own mistakes.

Nor is it relevant that Janssen claims to have discovered "biphasic" absorption. RedBr.33. Janssen barely mentioned that point (which has nothing to do with "unequal" loading doses) before this appeal. The argument is also in tension with Janssen's assertion that "it is the formulation that controls release rate, not the dose," RedBr.43. Regardless of any alleged insight, prior art discloses the claimed formulation, schedule (days 1-8-32-64), and amounts. Discovering a previously unappreciated property, or *why* prior art works, does not make an old invention patentable. *Compare Atlas Powder Co. v. Ireco*, *Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999), *with* RedBr.46 ("unknown and unexpected properties of paliperidone palmitate discovered by the inventors").

Finally, Janssen contends that because "[p]harmacokinetic data and modeling" show the claimed dosing regimen surpassed the target pa-

tient percentage Janssen "identified as critical," RedBr.35, that demonstrates unexpected results. Again, Janssen confuses issues. Janssen's preferred population goal for "the market place," Appx56123, is not a POSA's expectations. Nor does it mean anything above the goal is a difference in kind, much less that any regimen was uniquely distinct in meeting it. *Prima facie* obviousness was established and unrebutted. This Court should reverse.

### B. Regardless, Claim 2 is Obvious as a Matter of Law.

The judgment must also be reversed under *KSR* and this Court's previous decision. "[T]he content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR*, 550 U.S. at 427. By 2007, paliperidone's "safety… efficacy for treating schizophrenia, and its recommended dosing were all well established." 97 F.4th at 921-22. Other LAI antipsychotics "were on the market." *Id.* at 921. "Loading doses" were well-explored including in Ereshefsky, and the Haldol label.

Prior art gave POSAs multiple reasons to use the claimed regimens (among many suitable regimens) for "a" patient. Appx2330-2336. The

’548 (phase III) protocol confirms the claimed amounts, on the claimed schedule, should be safe and effective. And the ’544 patent and WO’384 confirm the same for these dose amounts. BlueBr.8-12. The ’544 patent teaches an effective *range* of monthly doses according to body weight. BlueBr.9. Prior-art teachings to start with the maximum effective and safe dose to avoid oral supplementation thus pointed to 150mg-eq. From there, using a second 100mg-eq. dose at day 8 is only a matter of selecting from *any* of the three prior-art day-8 doses (150, 100, 50), which were *all* expected to be suitable. Appx29 (“a POSA would credit Janssen’s hypothesis that the doses tested are likely to be safe and effective”); Appx10320(320:5-12).

Selecting among known doses is a “predictable variation.” *KSR*, 550 U.S. at 417. The Haldol label confirms unequal decreasing loading doses were used with LAI antipsychotics. Ereshefsky further confirms loading doses for LAI antipsychotics were well-explored in prior art. BlueBr.15.

Defendants were not required to prove motivation to use “unequal” loading doses specifically, or to prefer the claimed doses *over other equally suitable possibilities*. RedBr.36; Appx18. Importantly, and what

the district court seemingly missed, is that it is enough that multiple regimens *including* the claims are obvious, or that a POSA would be led to subject matter *including* the claims. *KSR*, 550 U.S. at 419 ("If the claim extends to what is obvious, it is invalid."); *Yeda Rsch. v. Mylan Pharms., Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018) (affirming obviousness; POSAs "would be motivated to combine Pinchasi's 40mg every other day dose with a less frequent dosing regimen, *such as* 3x/week"); *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380 (Fed. Cir. 2023) ("not necessary to show that a combination is the *best* option, only that it be a *suitable* option." (original emphasis)).

As before, Janssen recasts legal errors as "credibility" rulings, RedBr.41; *see* JanssenBr., Fed. Cir. 22-1258, ECF#39, at 4, 6, 45-46 (Sept. 6, 2022); Appx70036(10-16), and tries to cabin Defendants' obviousness arguments as limited to one expert's (Wermeling's) testimony, and thus rising or falling with his credibility. *E.g.*, RedBr.15-17, 23. As before, legal errors cannot be "insulate[d] … from review by denominating them credibility determinations." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985); *Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1381 (Fed. Cir. 2010). The factfinder is "not constrained to an expert's

say-so; *other documentary evidence*, such as the teachings of the prior art or problems known in the field of endeavor … can provide the requisite support for the court's motivation finding." *Adapt Pharma Ops., Ltd. v. Teva Pharms USA, Inc.*, 25 F.4th 1354, 1368-69 (Fed. Cir. 2022); *cf. KSR*, 550 U.S. at 426-27 (expert testimony). Teva's obviousness evidence included published prior art, other testimony (including Janssen's witnesses), and admissions in the '906 patent. None of that can be dismissed as Janssen suggests.

#### 1. The District Court Erroneously Presumed Significance of Unequal Loading Doses, and Required a Singular Motivation to Pursue the Claimed Regimens.

The district court's description of the motivation inquiry is facially erroneous. Appx18. Defendants were required to show that a POSA would modify prior art to arrive at subject matter within the claims. *See KSR*, 550 U.S. at 419-20; *In re Lintner*, 458 F.2d 1013, 1015 (CCPA 1972). A POSA might be led to the claimed regimens specifically, *or to a broader set of obvious regimens that includes* claims. *E.g.*, *Yeda*, 906 F.3d at 1046; *Intel*, 61 F.4th at 1381. The district court, however, emphasized that 150

and 100 are "unequal," "decreasing," and "independent" of the maintenance doses, [2] Appx18, required Defendants to show a "motivation … to reach the *specific* dosing regimen of Claim 2." *Id.*; BlueBr.44. Its analysis repeatedly invoked the "specific dosing regimen" refrain, using "unequal," "decreasing," and "independent" criteria to dismiss individual references. BlueBr.44.

That repeats an error this Court identified before. 97 F.4th at 930. No authority requires a motivation to pursue *only* the claimed regimens, or evidence that a POSA would be concerned with any relationships one might draw from a numerical sequence. The POSA need only recognize the suitability of the claimed regimens to treat "a" patient. BlueBr.43-45; *see* 97 F.4th at 926.

This is a *legal*, methodological error warranting reversal. It is unresponsive to complain that a portion of Defendants' brief discussing legal errors "cites nothing from the factual record," or to repeat that the district court found Defendants' "proof" lacking. RedBr.36-37. Under the

[2] All claimed loading doses are within the claimed range of maintenance doses (and also disclosed by WO'384). No dose is described in relative terms—*i.e.*, as "independent" or "dependent" of any other dose.

correct standard and undisputed facts, Defendants *did* prove obviousness. The district court ruled otherwise by subjecting Defendants to a nonexistent burden. Janssen does not dispute that the district court's logic would require a specific motivation to pick any arbitrary dose (137mg-eq or 113 mg-eq) even when *all* in the ranges disclosed by prior art were known to be safe and effective. And here, the *specific* doses *were*, in fact disclosed. If 100/100 and 150/150 were both believed suitable—as the '548 protocol and WO'384 undisputably establish—then 150/100 must also be suitable.

### 2. The District Court Erroneously Siloed Prior Art.

The district court's new opinion repeats the old opinion's methodological error of siloing prior-art references, which disregards the skilled artisan's perspective, and effectively finds nonobviousness because no individual reference anticipates. 97 F.4th at 928; BlueBr.46-55.

**WO'384 and the '544 Patent.** The '544 patent teaches therapeutically-effective paliperidone palmitate dosing by body weight; WO'384 teaches the Invega Sustenna formulation and a range of suitable, effective doses. The district court erroneously dismissed both for not "disclos[ing] a *loading* dose regimen" specifically. BlueBr.46.

Rather than defend that reasoning, Janssen suggests those references can be ignored if Wermeling did not explicitly single each out as a "motivation." RedBr.39. But Teva's obviousness case was not limited to Wermeling's testimony. *Adapt*, 124 F.4th at 1368-69; *supra* pp.16-17. The '544 patent and WO'384's teachings are explicit, not materially disputed, and discussed in Defendants' briefing. Appx2330-2336. Moreover, Janssen's expert Sinko conceded a POSA could examine the '544 patent and WO'384 and "come up with an optimal dosage regimen for a specific patient." Appx11743(1743:7-23); BlueBr.48. Janssen contends Sinko's testimony was limited to "maintenance dosing." RedBr.39. His later testimony was not. Appx12197(2197:21-24); Appx12202(2202:9-30). The district court was not free to ignore WO'384 or the '544 patent, or repeat legal errors in considering them.

**Ereshefsky.** The Ereshefsky references teach a broadly-applicable loading-dose principle, with examples including LAI haloperidol decanoate. BlueBr.15, 50. The district court erroneously limited Ereshefsky to details of examples, rather than for all it teaches, and again dismissed it because it does not anticipate. BlueBr.49-51.

Janssen deflects by contending Wermeling's related testimony was "simply wrong." RedBr.40. Wermeling's testimony was correct, and consistent with *Janssen*'s witnesses. Ereshefsky teaches to "*use a larger initial dose to 'load' the patient, so that therapeutic effects are achieved more rapidly*." Appx14115. Wermeling explained how that teaching would lead a POSA to select a 150mg-eq. first dose, and how "recognizing that drug accumulation takes place after the first dose" would point toward "lower[ing] the second dose to 100 milligram equivalents." Appx10320(320:5-12). Janssen's expert Sinko *agreed* "speeding onset for an antipsychotic drug would be a known important goal." Appx11792-11793(1792:17-1793:5). Kahn's and Gopal's testimony was not inconsistent. RedBr.41. Inventor Gopal testified that a POSA would give a high first dose to stop a patient from harming himself or others. Appx11212(1212:10-16). Kahn did not limit his testimony to "oral antipsychotics," RedBr.41, he answered a broader question and then gave an example about oral antipsychotics. Appx12379-12380(2379:4-2380:2).

The district court's "not … fast enough to treat acute conditions" reasoning is irreconcilable with Ereshefsky. BlueBr.50. Janssen derides Ereshefsky's text as a "factoid, addressed by no trial witness," RedBr.42,

Even that is false. *See* Appx10520(520:7-9) (Wermeling: "I see on Page 111 is that he received a 100-milligram injection of haloperidol decanoate stat.").

Ereshefsky teaches dosing regimens for LAI antipsychotics (including referencing the Haldol label with its unequal decreasing loading doses as using "our [Ereshefsky's] loading dose technique," Appx14129), and confirms a skilled artisan would be motivated to speed onset of the therapeutic effect. Those teachings cannot be dismissed on reasoning that Ereshefsky does not also specifically teach "that a second loading dose should be smaller than the first." RedBr.43.

Nor does Ereshefsky's example of unequal, *increasing* loading doses "undermine Teva's obviousness theories." RedBr.42, An example of one thing does not teach away from others. 97 F.4th at 932. Janssen quotes Ereshefsky's observation that plasma concentration "dropped 'in the first 14 days,'" RedBr.42, but omits the next sentence: "This drop was not accompanied by a significant increase in the severity of illness or side effects." Appx14125-14126.

Janssen, not Defendants, "distorts Sinko's testimony," RedBr.42-43, while continuing to treat any teaching of one thing as implicitly teaching away from others. Sinko testified that formulation *and* dose amount affect how quickly the therapeutic window is reached. He testified that "*if you double the dose, you can double the Cmax*." Appx11594(1594:9-11), using a demonstrative, showing that any given concentration is reached more quickly with a higher dose:




Testimony that "it makes much more sense to get a faster formulation than an increased dose," Appx12111(2111:12-13), does not mean "POSAs would not have expected that larger first LAI loading doses could accelerate efficacy." RedBr.43.

**Karagianis.** Janssen correctly observes that Karagianis discloses *oral* administration of olanzapine, not the LAI version. RedBr.20, 43 (citing BlueBr.15, 53).[3] Janssen does not explain what substantive difference that makes. Strike "LAI" from pages 15 and 53 of the opening brief, and Defendants' point remains. Janssen does not dispute that Karagianis discloses a high loading dose of a second-generation antipsychotic, or that a POSA would be motivated to use a high initial dose to speed onset of efficacy. RedBr.40-41. As explained, that motivation, plus the '548 protocol, the '544 patent, and WO'384 disclosures, would suggest a 150mg-eq. initial dose, among others.

**Haldol Label.** The Haldol label teaches unequal initial doses *for an LAI antipsychotic*, *without* requiring oral supplementation. BlueBr.51-53. Appx16651-16652. Haldol further confirms that POSAs would not *limit* themselves to giving the same dose repetitively. Janssen ignores Haldol when it says prior-art LAIs required oral supplementation. RedBr.5-6. And "without oral supplementation" is not a claim limitation, in any event.

---

[3] The opening brief mistakenly referred to Karagianis as concerning a second-generation "*LAI*."

The district court again erroneously dismissed the Haldol label. *Compare* Appx28-29, *with* 97 F.4th at 926, 928, 930 (error to limit prior-art teaching to "specific amounts of medication given in these references"). Janssen has no sound response: it resorts to denying the initial dose is a loading dose, and explaining why the label does not itself anticipate the claims, RedBr.44-46. Even that ignores that the label teaches some patients would be given unequal decreasing doses as initial therapy. Appx16652.

### 3. The District Court Erroneously Assessed Reasonable Expectation of Success.

The district court's expectation-of-success analysis repeats errors this Court identified. BlueBr.55-58. Janssen's six responses are unsound. RedBr.46-50. Contrary to Janssen's suggestions, FDA approval is not the test for obviousness. 97 F.4th at 928-29.

*First*, Defendants have not "mischaracterized" the law. RedBr.47. Defendants' point is not that unpredictability is categorically irrelevant. It is that generalities like "drug trials routinely fail," Appx31, are insufficient. The district court here did exactly what this Court held improper in *Allergan, Inc. v. Sandoz Inc.*, "finding that there was no reasonable

expectation of success in view of the general unpredictability of the formulation arts and particularized, yet irrelevant, difficulties associated with the development of [the drug].” 726 F.3d 1286, 1292-93 (Fed. Cir. 2013).

Janssen’s citations are inapposite. In *Honeywell Int’l Inc. v. Mexichem Amanco Holding S.A. De C.V.*, 865 F.3d 1348, 1356 (Fed. Cir. 2017), the Board erred by reversing the burden of proof and requiring the patent owner to prove an expectation of failure. In *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375 (Fed. Cir. 2019), no prior art taught treating non-small cell lung cancer; the drug had only completed Phase I with no efficacy, and *99.5%* of the 1,630 other new drugs targeting non-small cell lung cancer failed Phase II trials. *Id.* at 1385. No similar facts exist here.

*Second*, in criticizing “single or maintenance dose” regimens of WO’384 and the ’544 patent, RedBr.48, Janssen ignores that both references disclosed therapeutically-effective monthly paliperidone palmitate dosing, Appx13317(18:10-15); Appx13238(2:38-43); Appx13241(8:17-19), and that the claimed doses are within the disclosed ranges. The only difference between monthly dosing and Claim 2 is that two doses are given in the first eight days. But that interval is disclosed in the ’548 protocol,

which Janssen acknowledges a POSA would expect to succeed. RedBr.32. Considering the art as a whole, and applying the standard of "reasonable expectation of success, not a guarantee," *Pfizer*, 480 F.3d at 1364, the claims are obvious.

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1379-80 (Fed. Cir. 2021), does not help Janssen. There, the prior-art label for the drug specifically warned *against* what the claims specifically recited: using over 300 mg with a CYP3A inhibitor. *Id.* The evidence here is the *opposite*. Prior art taught that the claimed doses, at the claimed intervals were expected to be safe and effective.

*Third*, none of Janssen's citations support discounting the '548 protocol because it lacks data, much less considering it in isolation from the '544 patent and WO'384, which teach efficacy. RedBr.48; *see* 97 F.4th at 929.

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1346 (Fed. Cir. 2021) underscores that reasonable expectation of success "*need not rely on clinical data*… nor must it include a demonstration of certainty that the treatment would be successful in every instance." *Id.* In

*Eli Lilly*, one prior-art reference concerned a different molecule, and another was a rat study—in contrast to the ’548 Phase III protocol, the ’544 patent, and WO’384 in this case. *Id.* at 1347. Here, moreover, the ’906 patent itself has no clinical data for the claimed regimen. Janssen cannot demand more from prior art. *Alcon Research Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1369 (Fed. Cir. 2012); *Merck & Co. v. Teva Pharms USA, Inc.*, 395 F.3d 1364, 1373-74 (Fed. Cir. 2005). As for *Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 642 (Fed. Cir. 2017), the claims there required an outcome (“decreasing a risk of cardiovascular hospitalization”), and prior art was undeveloped—unlike here. *Id.* at 648.

*Fourth*, Janssen argues there can be no expectation of success modifying a prior-art regimen (the ’548 protocol) when the regimen lacked clinical results. RedBr.49.[4] That takes the same siloed approach to prior art this Court rejected in the last appeal. The ’548 protocol was a Phase III trial that Janssen concedes a POSA would have expected to succeed. As explained, the ’548 protocol did not stand alone as evidence informing a POSA’s expectations. The notion that a skilled artisan would not expect

[4] *Salix* does not support Janssen. RedBr.49. The *Salix* claims required an outcome (“12 weeks of adequate relief of symptoms”), and prior art was no more advanced than a Phase II trial. 98 F.4th at 1061, 1063-64.

success treating "a" patient by tweaking one dose of the '548 protocol's regimen by 50mg-eq. is unsupportable.

*Fifth*, Janssen claims it was not error to consider "testimony that the standard approach to dosing LAI antipsychotics was to start low and adjust upward as needed." RedBr.49. This Court rejected that already, 97 F.4th at 934. And Janssen ignores that LAI antipsychotics like Haldol taught unequal decreasing loading doses, not "start low/go slow." Appx16651-16652.

*Last*, Janssen contends Defendants "fail[] to identify any factual error," RedBr.50, but fails to identify any materially disputed facts. Here, the district court made *legal* errors. Obviousness is "a legal determination," and where the salient facts are undisputed and obviousness "is apparent in light of those factors," reversal is appropriate. *KSR*, 550 U.S. at 427.

## II. The District Court Erroneously Upheld the Remaining Representative Claims.

### A. The Renal-Impairment Claims (10 and 13) are Obvious.

For the renal-impairment claims, Janssen mainly recycles arguments from the previous appeal, and simply denies the district court made the methodological errors Defendants identified. RedBr.50-54.

*First*, Janssen contends the district court "simply explain[ed] that Teva's argument…does not work for claim 13," RedBr.51, when the court emphasized, at least five times, that claim 13 is not exactly 50% or 25% of any prior-art regimen. *See* BlueBr.60. But Defendants' argument was never limited to exact halving or 75%-reduction of '548 protocol regimens. Defendants raised the following points, which Janssen *does not* dispute: **(1)** all of the claimed doses are within prior-art ranges; **(2)** paliperidone palmitate is metabolized by the kidneys; **(3)** it was known to give renally-impaired patients reduced doses of renally-metabolized drugs; and **(4)** prior art such as the Invega ER and Risperdal labels taught half-doses for renally-impaired patients. Appx2344-2345; Appx2584. Under the proper analysis, teachings to reduce by 50% or 75% *add* to a POSA's understanding. It was error to treat those teachings as silos, limiting a POSA to cutting doses of a single regimen exactly by half and blinding the POSA to broader teachings of body-weight-based dosing and dose-reduction for renally-impaired patients, when treating *a* patient. The district court's rigid analysis disregards the skilled artisan's perspective, and is what *KSR* and this Court's previous decision say not to do.

*Second*, Janssen barely defends the district court's re-imposition of a "mild" limitation. Janssen again contends that a single sentence in Wermeling's testimony somehow limited Teva's *entire* obviousness theory to mild renal impairment. RedBr.51-52. That was wrong in the previous appeal, and wrong now. Janssen does not dispute that—contrary to the district court's holding, Appx39—Wermeling said nothing about motivation during that line of questioning. Nor does Janssen dispute the obvious explanation for Wermeling's statement: He was addressing the Invega Sustenna label, the drug at issue in this case. BlueBr.63.

*Last*, Janssen's insistence that the district court did not rely on teaching away cannot be squared with the district court's opinion or this Court's decision. RedBr.54. Cleton 2007 indisputably teaches considering lower doses for moderate and severe renal impairment. BlueBr.66; Appx14112. Yet, the district court treated Cleton 2007's *silence* about mild renal impairment as implicit teaching away. Appx40-43. This Court rejected that reasoning. 97 F.4th at 932. Knowing this, Janssen downplays the district court's reasoning, asserting it merely "cited some case law that discussed teaching away." RedBr.54.

The record shows otherwise. Janssen's post-remand brief cited the same teaching-away cases in support of the same teaching-away arguments, contending that any difference between Cleton 2007 and another reference constitutes "contradictory guidance." Appx2455-2456. The district court adopted those arguments, repeatedly using the language of teaching away,[5] not just "cit[ing] some case law." RedBr.54. That was error: teaching multiple alternatives or variations is not "teaching away," and Janssen no longer pretends it is.

### B. The Particle-Size Claims (20 and 21) are Obvious.

For the particle-size claims, Janssen does not dispute that the district court's new opinion is substantively indistinguishable from the old, overturned opinion. *See* BlueBr.67. This Court's previous decision fully answers Janssen's brief. This Court explained: "[a] teaching that a d(90) value of 200nm was optimal *is not* a criticism of all other particle sizes." 97 F.4th at 932. "That the '544 patent did not disclose a preferred d(50)

---

[5] Appx40 (prior art "might lead away from the claimed invention"); *id.* ("one reference might accurately *discredit another*"); Appx42 ("would be *led in a direction divergent* from the path that was taken in the claim"); *id.* (prior art "*critiqu[es] or otherwise discourag[es]*" a combination); Appx43 ("conflicting teachings").

value does not amount to a teaching away either." *Id.* "Silence does not apply teaching away." *Id.*

Janssen concedes "the '544 Patent describes one example of a formulation [Formulation B] meeting [the particle-size] limitation" of claims 20-21. RedBr.55. Janssen nevertheless contends that the '544 patent's *claims* use a smaller d(90) particle size than Formula B, the patent implicitly disparages its own example formulation. RedBr.55-58. That is *exactly* the district court's previous reasoning, Appx2231-2232; Appx45-46, which this Court rejected. 97 F.4th at 932. At most, the '544 patent "teach[es] that a d(90) value of 2000nm was optimal," *id.*, which, again, "*is not* a criticism of all other particle sizes." *Id.* Not preferring "does not amount to a teaching away." *Id.*

Absence of preference is not "implicit" disparagement, even if an expert says it is. RedBr.54-58. Again, this Court rejected that argument from Janssen in the last appeal. 97 F.4th at 932. If the Court thought Dr. Sinko's testimony overcame the district court's legal errors, it would have deemed the errors harmless. *E.g.*, *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1071 n.6 (Fed. Cir. 2018). The errors were not harmless. "[T]eaching away is a demanding standard, requiring distinctly negative

teachings that go beyond even expressing a preference for an alternative."[6] *In re Samuels*, No. 21-2166, 2024 WL 960453, at *3 (Fed. Cir. Mar. 6, 2024).

Because the alleged teaching away concerned attributes other than the d50 disclosure relevant to the claimed invention, it is too weak to defeat obviousness. *Medichem SA v. Rolabo, SL,* 437 F. 3d 1157, 1165 (Fed Cir 2006) ("there is no rule that a single reference that teaches away will mandate a finding of nonobviousness").

Janssen also ignores its concession that the '544 patent's claim 7 covers Invega Sustenna, like the '906 patent's particle-size claims. BlueBr.67-68; RedBr.58-59; Appx56412-56414(4.1-4.2b); Appx11759-11760(1759:11-1760:5). Both patents cannot cover the same attribute for the same drug, yet somehow teach away from each other. Put differently, the '544 patent (presumed enabled) cannot both *claim and teach away* from the same thing.

Janssen's other arguments lack merit. Generalized arguments about unpredictability, RedBr.60-61, cannot defeat obviousness. *E.g.*,

---

[6] In *AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1336 (Fed. Cir. 2021), cited RedBr.57-58, the prior art "clearly d[id]n't work." BlueBr.70. Not so here. Appx13242(9:45-64).

*Pfizer*, 480 F.3d at 1364. Janssen's assertion that optimizing the claimed d(50) value would lead away from the claimed range, RedBr.61, misstates the record. Wermeling did not testify that a POSA would reduce particle size to below the claimed range; only that the '544 patent describes and enables reducing micron-sized particles that preceded the '544 patent. Appx10291(291:6-19); Appx10294(294:20-25). That only confirms that particle size is a result-effective variable, and Defendants were not required to show that the claims were the *most* obvious, only suitable. BlueBr.71. The district court's new particle-size analysis is wrong for the same reasons as before.

## III. Secondary Considerations Do Not Prevent Reversal.

Janssen does not dispute that this Court need not reach secondary considerations to reverse, BlueBr.71-72, nor does it offer any sound defense of the district court's errors.

### A. Janssen's Industry-Praise and Skepticism Evidence Is Legally Deficient and Factually Weak.

The district court's industry-praise analysis contravened this Court's instruction that there must be a nexus between the evidence and "what is both claimed and novel" in the patent. 97 F.4th at 933. There is none, and Janssen should not be given a third bite at the apple. The two

articles the district court labeled "industry praise," concern Invega Sustenna and paliperidone *generally*, BlueBr.73-75, which this Court has already explained is insufficient. 97 F.4th at 935 n.11.

Janssen disputes none of this. It cites Dr. Kohler's expert testimony, but that too concerns Invega Sustenna *generally*. RedBr.67 (citing Appx11910-11912(1910:7-1912:13). Kohler attributed the "improved adherence to medication" to the "*whole package*" of Invega Sustenna's benefits, Appx 11912(1912:8-9), not the '906 patent's claims and certainly not "unequal, decreasing" loading doses. *See* 97 F.4th at 933. There is no evidence of improved adherence compared to any prior-art regimen, such as the '544 patent or '548 protocol.

"Skepticism" is no different and resembles Janssen's erroneous teaching-away arguments. Janssen's "evidence" is just general questions about whether the loading doses should start lower. RedBr.65. That is a perennial debate for almost every drug. Indeed, the alternative starting points Janssen's "skeptics" suggested all fell within a prior-art range of doses thought to be safe and effective. Discussion of how to optimize within a prior-art range is not skepticism—*i.e.*, "[d]oubt or disbelief by skilled artisans regarding the likely success of a combination or solution."

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1335 (Fed. Cir. 2016). Janssen's citation to *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1378 (Fed. Cir. 2019), RedBr.66-67, only proves the point: *Neptune*'s *explicit criticism* of changes to an ongoing clinical trial in response to fatalities *is* skepticism, and is nothing like this case.

Janssen's only further response is to dilute the nexus requirement. It contends that with "combination inventions," proof of a nexus is not limited to the "new" features of the invention. RedBr.66. That is a dubious proposition, but cannot help Janssen. Its secondary-considerations evidence lacks any nexus either to the loading-dose sequence the district court focused on, *or* the regimens as a whole.

### B. Blocking Patents Undermine Any Commercial Success or Long-Felt Need.

This Court ordered the district court to "focus[] on the blocked space that related to Invega Sustenna" when considering the "impact of the blocking patents." 97 F.4th at 936. That is what Defendants presented on remand, Appx2368-2371, and what the district court ignored, BlueBr.78-79. Janssen does not dispute the existence or scope of its blocking patents. BlueBr.77. By the '906 patent's 2007 priority date, or Invega Sustenna's 2009 approval date, no competition had been legally possible for *fourteen*

*years*. *Id.* Janssen's compound patent would not expire until 2013, and its composition and use patents would block competition into 2018. BlueBr.77-79. Thus, Janssen's assertion (RedBr.64) that Defendants ignored the "effects of these patents," is false.

Janssen offers little else. Like the district court, Appx60, Janssen points to a 2009 Teva provisional patent application. RedBr.63-64. That application only contained process claims for purifying paliperidone palmitate. Appx56146-56147. It had nothing to do with treatment, let alone commercial U.S. competition with Janssen in 2010-2020.

Janssen contends both sides' witnesses "agreed" incentives existed in 2007 to begin research and development. RedBr.64. The actual testimony was "incentive to begin R&D on paliperidone palmitate" would "be very limited …given [Janssen's] four blocking patents." Appx12774-12775(2828:23-2829:3). A "very limited" "incentive to begin R&D" does not suggest the commercial space was not blocked.

Janssen otherwise just recapitulates its long-felt-need and commercial-success evidence. RedBr.62-64. None of that matters without first addressing the impact of Janssen's blocking patents, which the district

court failed to do properly, again. The evidence is weak, and was assigned no specific weight. Secondary considerations cannot prevent reversal.

## CONCLUSION

The judgments should be reversed.

February 19, 2025

Respectfully submitted,

*/s/ Deepro R. Mukerjee*
(signed with permission)

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8776

Eric T. Werlinger
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW
Suite 800
Washington, DC 20006
(202) 625-3500

Jillian M. Schurr
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5200

*Counsel for Appellant Mylan Laboratories Limited*

*/s/ John C. O'Quinn*

John C. O'Quinn
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C. 20004
(202) 389-5000

Jeanna M. Wacker
Christopher T. Jagoe
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800

Noah Frank
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
(617) 385-7570

*Counsel for Appellant Teva Pharmaceuticals USA, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court. According to the system used to prepare it, the brief contains **7,000** words.

/s/ *John C. O'Quinn*